# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT KING, III,

      Petitioner,

      v.

TABB BICKELL,

      Respondent.

CIVIL ACTION NO. 3:13-cv-02118

(CAPUTO, J.)
(SAPORITO, M.J.)

## REPORT AND RECOMMENDATION

On August 9, 2013, the Court received and filed a *pro se* petition for a writ of habeas corpus submitted pursuant to 28 U.S.C. § 2254, signed and mailed by the petitioner, Robert King, III, on August 5, 2013. (Doc. 1). At the time, King was incarcerated at SCI Huntingdon, located in Huntingdon County, Pennsylvania.

## I. STATEMENT OF THE CASE

### A. Procedural History

On January 14, 2009, following a jury trial, King was convicted of third-degree murder, two counts of aggravated assault, and three counts of recklessly endangering another person. *Commonwealth v. King*, Docket No. CP-67-CR-0000716-2008 (York County C.C.P.). On March 30, 2009, he

was sentenced to an aggregate prison term of 27 to 54 years. *Id.*[1] His conviction and sentence were affirmed on direct appeal by the Superior Court of Pennsylvania on September 10, 2010. *Commonwealth v. King*, 13 A.3d 979 (Pa. Super. Ct. 2010) (table decision).[2] He petitioned the Supreme Court of Pennsylvania for allocatur, which was denied on March 2, 2011. *Commonwealth v. King*, 17 A.3d 1252 (Pa. 2011) (table decision).[3]

King filed a *pro se* PCRA petition in the Court of Common Pleas on or about March 28, 2011. *Commonwealth v. King*, Docket No. CP-67-CR-0000716-2008 (York County C.C.P.).[4] Counsel was appointed to represent him and an evidentiary hearing was held before the PCRA court on June 1, 2011. *Id.*[5] At the conclusion of the June 1, 2011, hearing, the PCRA court denied King's petition. *Id.*[6] The denial of his PCRA petition was affirmed on appeal by the Superior Court of Pennsylvania on April 12, 2012. *Commonwealth v. King*, 48 A.3d 476 (Pa. Super. Ct. 2012) (table

---

[1] RR482–501, Doc. 12-2, at 18–37.
[2] RR617–56, Doc. 12-2, at 153–82.
[3] RR650, Doc. 12-2, at 186.
[4] RR652–60, Doc. 12-2, at 188–96.
[5] RR661–703, Doc. 12-2, at 197–239.
[6] RR 700, Doc. 12-2, at 236; *see also* RR714–22, Doc. 12-2, at 250–58.

decision).[7] He petitioned the Supreme Court of Pennsylvania for allocatur, which was denied on September 10, 2012. *Commonwealth v. King*, 53 A.3d 50 (Pa. 2012) (table decision).[8]

King filed the instant *pro se* federal petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on August 5, 2013.[9] (Doc. 1; *see also* Doc. 11). On November 6, 2013, the respondent filed his answer to the petition (Doc. 12; *see also* Doc. 13; Doc. 14). On December 26, 2013, King filed his reply. (Doc. 17).

## B. Habeas Claims Presented

Liberally construed, *see generally Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–46 (3d Cir. 2013) (discussing a court's obligation to liberally construe *pro se* pleadings and other submissions, particularly when dealing with imprisoned *pro se* litigants), the *pro se* petition has asserted that King is entitled to relief under 28 U.S.C. § 2254 for the following reasons:

---

[7] RR727–34, Doc. 12-2, at 263–70.

[8] RR 738, Doc. 12-2, at 274.

[9] The instant petition was received and docketed by the Court on August 9, 2013, but it appears to have been deposited in the prison mail system on August 5, 2013, and thus effectively filed that day. *See* Rule 3(d), 28 U.S.C. foll. § 2254.

(1)     The trial court erred in denying King's motion to suppress a
        purportedly unduly suggestive photo array and subsequent in-
        court identification by witnesses tainted by the photo array;

(2)     King's conviction for third-degree murder, aggravated assault,
        and reckless endangerment was based on insufficient evidence
        as a matter of law because the evidence failed to establish
        beyond a reasonable doubt that he acted with malice
        aforethought or that he did not act in self-defense when he shot
        the victim;

(3)     King's conviction for third-degree murder, aggravated assault,
        and reckless endangerment was against the greater weight of
        the evidence because the evidence failed to establish beyond a
        reasonable doubt that he acted with malice aforethought or
        that he did not act in self-defense when he shot the victim;

(4)     The trial court abused its discretion in admitting autopsy
        photographs over King's objection;

(5)     King was denied effective assistance of counsel in trial
        proceedings because his trial counsel failed to investigate and
        present testimony by character witnesses in his defense;

(6)     King was denied effective assistance of counsel on direct appeal because his appellate counsel failed to submit copies of the purportedly unduly suggestive photo array for inclusion in the certified record on appeal, causing the Superior Court to dismiss the underlying claim of trial error on the ground that it had been waived;

(7)     King was denied effective assistance of counsel in trial proceedings because his trial counsel failed to object and move for a mistrial when a prosecution witness testified about a hearsay statement by the deceased victim, calling King and his brother "stick-up kids," in violation of a pretrial suppression order;

(8)     King was denied a fair trial by prosecutorial misconduct because the prosecution failed to instruct its witnesses to avoid testifying about a hearsay statement by the deceased victim, calling King and his brother "stick-up kids," in violation of a pretrial suppression order;

(9)     The trial court erred in failing to declare a mistrial *sua sponte* when prosecution witnesses testified about a hearsay

statement by the deceased victim, calling King and his brother "stick-up kids," in violation of a pretrial suppression order;

(10)   King was denied effective assistance of counsel in PCRA proceedings because PCRA counsel failed to "appropriately" consult with him regarding other possible issues to be raised, failed to supplement King's PCRA petition with unspecified issues counsel might have identified through such consultation, and failed to adequately explain the law governing PCRA proceedings;

(11)   King was denied effective assistance of counsel in PCRA proceedings because PCRA counsel failed to raise a claim of ineffective assistance of trial counsel based on trial counsel's purportedly erroneous advice that King not testify in his own defense at trial;

(12)   King was denied effective assistance of counsel in PCRA proceedings because PCRA counsel failed to raise a claim of ineffective assistance of trial counsel based on trial counsel's failure to move to suppress King's prior conviction for robbery;

(13)   King was denied effective assistance of counsel in PCRA proceedings because PCRA counsel failed to raise an ineffective assistance of trial counsel claim with respect to prosecution witness testimony about hearsay statements by the deceased victim presented at a trial, erroneously limiting this claim to preliminary hearing testimony only;

(14)   King was denied effective assistance of counsel in PCRA proceedings because PCRA counsel failed to advise him that testimony by prosecution witnesses about hearsay statements by the deceased victim violated his constitutional right to confront witnesses;

(15)   King was denied effective assistance of counsel in trial proceedings because trial counsel failed to adequately interview him and his brother regarding the specific facts of the incident out of which the criminal charges against King arose;

(16)   King was denied effective assistance of counsel in PCRA proceedings because PCRA counsel failed to adequately interview him and his brother regarding the specific facts of

the incident out of which the criminal charges against King arose, and, as a consequence of this failure, PCRA counsel failed to raise an ineffective assistance of trial counsel claim based on trial counsel's failure to elicit these facts;

(17)   King was denied effective assistance of counsel in trial proceedings because trial counsel failed to seek a psychiatric or psychological evaluation of King's mental and emotional development at the time of the charged offense;

(18)   King was denied effective assistance of counsel in PCRA proceedings because PCRA counsel failed to raise a claim of ineffective assistance of trial counsel based on trial counsel's failure to seek a psychiatric or psychological evaluation of King's mental and emotional development at the time of the charged offense;

(19)   King was denied effective assistance of counsel in PCRA proceedings because his PCRA counsel filed a no-merit letter concluding that King's ineffective assistance of appellate counsel claim concerning waiver of the underlying suggestive-photo-array issue lacked merit;

(20)   King was denied effective assistance of counsel on direct appeal because appellate counsel failed to explicitly raise (and preserve) Fourteenth Amendment due process and equal protection claims in connection with his sufficiency-of-the-evidence, weight-of-the-evidence, suggestive photo array, and autopsy photograph claims; and

(21)   King was denied effective assistance of counsel in PCRA proceedings because PCRA counsel filed a no-merit letter concluding that King's sufficiency-of-the-evidence, weight-of-the-evidence, suggestive photo array, and autopsy photograph claims lacked merit.

King raised claims 1, 2, 3, and 4 in his direct appeal to the Superior Court, which denied claim 1 on waiver grounds—appellate counsel failed to submit black-and-white and color copies of the photo array at issue for inclusion in the certified record on appeal—and claims 2, 3, and 4 on the merits, and allocatur was subsequently denied by the Supreme Court of Pennsylvania. King raised claims 6, 7, 8, and 9 in his PCRA appeal to the Superior Court, which denied all four claims on their merits, and allocatur was subsequently denied by the Supreme Court of Pennsylvania. He

appears to have raised the remaining claims for the first time in the instant federal habeas petition.

## II.  DISCUSSION

### A. Withdrawn claim

In claim 5, King claimed that trial counsel was ineffective for failing to fully investigate and present character witnesses in his defense. In his reply, the petitioner has expressly conceded and withdrawn this claim. (Doc. 1, at 15). Accordingly, it is recommended that the petition be denied with respect to King's ineffective assistance claim based on trial counsel's failure to investigate and present character witnesses—claim 5—on the ground that it has been expressly withdrawn by the petitioner.

### B. Ineffective assistance of PCRA counsel claims

In claims 10, 11, 12, 13, 14, 16, 18, 19, and 21, King claims that he was denied the effective assistance of counsel in state court PCRA proceedings. But freestanding claims of ineffective assistance of PCRA counsel are not cognizable in federal habeas proceedings. *See* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."); *see also Pennsylvania v. Finley*, 481 U.S. 551, 555–56 (1987) (no constitutional right to counsel in

collateral post-conviction proceedings); *Coleman v. Thompson*, 501 U.S. 722, 755 (1991) (no constitutional right to counsel on appeal from initial collateral post-conviction proceedings). *See generally Danner v. Cameron*, 955 F. Supp. 2d 410, 417 n.7 (M.D. Pa. 2013) (summarizing law with respect to ineffective assistance of PCRA counsel habeas claims).

Accordingly, it is recommended that the petition be denied with respect to King's ineffective assistance of PCRA counsel claims—claims 10, 11, 12, 13, 14, 16, 18, 19, and 21—on the ground that these claims are not cognizable on federal habeas review.

## C. Newly raised ineffective assistance claims

King's claims 15, 17, and 20 are asserted for the first time in the instant federal habeas petition. They were not previously presented to the state courts on direct appeal or on post-conviction collateral review.

Generally, for this Court to address the merits of a habeas petition, all of the claims contained in the petition must be exhausted. 28 U.S.C. § 2254(b). Ordinarily, "[t]he exhaustion requirement is satisfied only if the petitioner can show that he fairly presented the federal claim at each level of the established state-court system for review." *Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004); *see also O'Sullivan v. Boerckel*, 526 U.S. 838,

844–45 (1999) ("[T]he exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . ."). "'Fair presentation' of a claim means that the petitioner 'must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted.'" *Holloway*, 355 F.3d at 714 (quoting *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999)). A federal claim may be exhausted by presenting it either on direct appeal or in post-conviction PCRA proceedings. *See O'Sullivan*, 526 U.S. at 844 (citing *Brown v. Allen*, 344 U.S. 443, 447 (1953)). In Pennsylvania, a federal claim may be exhausted by presenting it to the Superior Court of Pennsylvania, either on direct appeal from a state criminal conviction or on appeal from a PCRA court's denial of post-conviction relief. *See Lambert v. Blackwell*, 387 F.3d 210, 233 (3d Cir. 2004); *see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, Order No. 218, 30 Pa. Bull. 2582 (Pa. May 9, 2000); Pa. R. App. P. 1114 historical notes (Order of May 9, 2000).

Here, it is beyond dispute that King failed to present any of these claims to the state appellate courts on direct appeal or in his PCRA appeal.

Nevertheless, if these claims were to be dismissed without prejudice for failure to exhaust, and King were to return to state court now to attempt to exhaust them in a PCRA petition, his PCRA petition would be untimely and the matter would be dismissed by the state court pursuant to 42 Pa. Cons. Stat. Ann. § 9545(b). *See Keller v. Larkins*, 251 F.3d 408, 415 (3d Cir. 2001). Under this state statute, a PCRA petition must be filed "within one year of the date the judgment becomes final," subject to certain enumerated exceptions not applicable here. *See* 42 Pa. Cons. Stat. Ann. § 9545(b). "When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is 'an absence of available State corrective process.'" *McCandless*, 172 F.3d at 260 (quoting 28 U.S.C. § 2254(b)(1)(B)(i)); *see also Coleman*, 501 U.S. at 732 ("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him."). Thus, for the purpose of this federal habeas petition, King's claims 8, 9, 15, 17, and 20 are technically exhausted. *See Hurlburt v. Lawler*, Civil No. 1:CV-03-0665, 2008 WL 2973049, at *12 (M.D. Pa.

Aug. 4, 2008).

"Even so, this does not mean that a federal court may, without more, proceed to the merits. Rather, claims deemed exhausted because of a state procedural bar are procedurally defaulted . . . ." *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000). Generally, a federal court will not review a claim that is procedurally defaulted. *Johnson v. Folino*, 705 F.3d 117, 127 (3d Cir. 2013). A claim is procedurally defaulted when "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule." *Coleman*, 501 U.S. at 750. The one-year statute of limitations applicable to state PCRA proceedings has been held to be such an independent and adequate state procedural rule. *See Glenn v. Wynder*, 743 F.3d 402, 409 (3d Cir. 2014); *Banks v. Horn*, 49 F. Supp. 2d 400, 403–07 (M.D. Pa. 1999). *See generally Bronshtein v. Horn*, 404 F.3d 700, 708–10 (3d Cir. 2005) (discussing history and strict application of the PCRA statute of limitations since 1999).

Notwithstanding procedural default, a federal court may review a habeas claim where the petitioner can demonstrate cause for the default and actual prejudice as a result, or that failure to review the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750;

*McCandless*, 172 F.3d at 260. It is the petitioner's burden to demonstrate circumstances excusing procedural default. *See Sweger v. Chesney*, 294 F.3d 506, 520 (3d Cir. 2002); *see also Coleman*, 501 U.S. at 750; *Lines*, 208 F.3d at 160. To demonstrate "cause" for a procedural default, the petitioner must show that "some objective factor external to the [petitioner's] defense impeded [his] efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Meanwhile, to demonstrate "actual prejudice," the petitioner must show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantive disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original); *Mutope v. Folino*, No. Civ. 3:CV-04-2053, 2005 WL 3132315, at *3 (M.D. Pa. Nov. 22, 2005)). Alternatively, to show that a fundamental miscarriage of justice will occur if the claims are not reviewed, a petitioner must present new evidence that he is actually innocent of the crime for which he has been convicted. *Cristin v. Brennan*, 281 F.3d 404, 412 (3d Cir. 2002); *see also Bousley v. United States*, 523 U.S. 614, 623 (1998) ("'[A]ctual innocence means factual innocence, not mere legal insufficiency."); *Schlup v. Delo*, 513 U.S. 298, 327

(1995) ("[A] petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.").

Liberally construing his petition, memorandum of law, and reply, King contends that claims 15, 17, and 20 may be considered by this Court on the merits because his PCRA counsel was ineffective for failing to fully investigate and advance these claims in PCRA proceedings, which constitutes "cause" excusing the procedural default of these claims.[10]

In *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), the Supreme Court of the United States recognized that, under certain circumstances, the procedural default of an ineffective assistance of counsel claim may be excused where the default was caused, in turn, by ineffective assistance of counsel in post-conviction collateral proceedings. *See Martinez*, 132 S. Ct. at 1315–21. Specifically, the *Martinez* Court held that:

> [A] procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [state] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

---

[10] King has produced no new evidence that he is actually innocent of the crimes for which he has been convicted.

*Id.* at 1320.

The *Martinez* Court explicitly limited its holding to cases where state procedural law provided that "claims of ineffective assistance of trial counsel *must* be raised in an initial-review collateral proceeding"—that is, in states like Arizona, where state procedural law explicitly prohibited the adjudication of ineffective assistance claims on direct appeal. *Id.* Shortly thereafter, the Supreme Court revisited its *Martinez* holding, extending it to apply not only to cases where state procedural law expressly prohibited ineffective assistance claims on direct appeal, but where "state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." *Trevino v. Thaler*, 133 S. Ct. 1911, 1921 (2013). The Third Circuit has subsequently examined Pennsylvania procedural law and found that *Martinez* applies in Pennsylvania. *Cox v. Horn*, 757 F.3d 113, 124 n.8 (3d Cir. 2014).

Under *Martinez*, the failure of a federal habeas petitioner's counsel to raise an ineffective assistance of trial counsel claim in an initial-review collateral proceeding can constitute "cause" if: (1) PCRA counsel's failure

itself constituted ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 687 (1984); and (2) the underlying ineffective assistance of trial counsel claim is "a substantial one," meaning that "the claim has some merit." *Martinez*, 132 S. Ct. at 1319; *see also Glenn*, 743 F.3d at 410. "Under *Strickland*, courts are precluded from finding that counsel was ineffective unless they find both that counsel's performance fell below an objectively unreasonable standard, and that the defendant was prejudiced by that performance." *Marshall v. Hendricks*, 307 F.3d 36, 85 (3d Cir. 2002).

Here, it is clear that the underlying ineffective assistance of trial and appellate counsel claims are meritless, and thus PCRA counsel's failure to advance those claims cannot constitute cause to excuse procedural default.

In claim 15, King contends that trial counsel was ineffective because he failed to elicit certain facts from King and his brother/co-defendant regarding the incident giving rise to King's conviction. In particular, King stated in his petition that:

> While some evidence came out at trial that the deceased was armed, drunk and threatening to shoot people (including Petitioner's brother), there was another point that was NOT brought out at trial because counsel had not asked Petitioner OR his brother for the *specific details* of the confrontation at issue—including every

word spoken between those involved or explain how such
may be important to know and present to the jury.
Specifically, . . . at one point during the confrontation at
issue, Petitioner's brother . . . said to the deceased, "if
this is a robbery, you can have the money"—indicating
that even Petitioner's brother believed this was the
victim's motive when repeatedly threatening to shoot
him.

(Doc. 1, at 18). King contends that this statement by his brother to the

deceased victim would have supported King's claim that he shot the victim

in self-defense because he feared they were being robbed by the victim. But

in light of other evidence presented at trial, including multiple witnesses

who testified that they saw King shoot the victim at close range in the

face, head, and torso, forensic evidence consistent with this testimony, and

an audiotaped jailhouse conversation in which King himself denied that

the shooting was self-defense, it is clear that the underlying ineffective

assistance claim lacks merit. (*See* RR494–95, Doc. 12-2, at 30–31

(summarizing evidence); RR 315, Doc. 12-1, at 318 ("Nah, it ain't self-

defense because I shot him like 11 [times.]").

In claim 17, King contends that trial counsel was ineffective because

he failed to seek a psychiatric or psychological evaluation of King's mental

and emotional development at the time of the offense of conviction. In

particular, King does not contend that he was mentally ill or incompetent

at the time of the offense or trial, but rather that he had not yet fully developed his emotional maturity, impulse control, or decision-making ability because he was only 18 years old at the time of the offense. He has proffered no medical, psychiatric, psychological, or other expert evidence in support of this claim. "It is well settled that prejudice caused by ineffective assistance of counsel cannot be based on mere speculation about the possibility of finding an expert witness, nor can it be based on mere speculation about the possible testimony." *Dobson v. United States*, Civil Action No. 13-1711 (PGS), 2016 WL 4941994, at *4 (D.N.J. Sept. 15, 2016) (citing *Duncan v. Morton*, 256 F.3d 189, 201–02 (3d Cir. 2001)); *Jurbala v. United States*, Civ. A. No. 08-47-GMS, 2011 WL 767175, at *6 (D. Del. Feb. 25, 2011) (citing *Duncan*, 256 F.3d at 201–02). Without any evidence of prejudice, the underlying ineffective assistance claim is meritless.

In claim 20, King contends that trial counsel was ineffective because he failed to explicitly raise and preserve due process and equal protection claims in connection with his sufficiency-of-the-evidence, suggestive photo array, and autopsy photograph claims. But King has failed to articulate in any manner just how these claims implicated his equal protection rights. Moreover, King's sufficiency-of-the-evidence claim presented to the state

courts on direct appeal necessarily implicated federal due process rights, making it unnecessary for appellate counsel to separately raise a related due process claim. *See Evans v. Court of Common Pleas, Delaware County, Pa.*, 959 F.2d 1227, 1233 (3d Cir. 1992). Finally, the state courts denied the underlying photo array and autopsy photo claims on their merits as presented, and King has failed to articulate any prejudice caused by appellate counsel's failure to advance these same claims under an alternative due process theory. In particular, King has failed to demonstrate in any fashion that trial court's admission of these two pieces of evidence "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Gibbs v. Shannon*, Civil No. 3:CV-08-0462, 2013 WL 5781107, at *9 (M.D. Pa. Oct. 25, 2013) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). As noted by the state courts, the purportedly suggestive photo array was immaterial because King's identity was never at issue in light of the several witnesses (including his brother) who saw him shoot the victim, and King has failed to proffer any evidence at all to counter the state courts' finding that the black-and-white autopsy photos were more probative than prejudicial. *See* 28 U.S.C. § 2254(e)(1) (absent clear and convincing evidence to the contrary, state

court findings of fact entitled to a presumption of correctness). In the absence of any evidence of prejudice, the underlying ineffective assistance claim is meritless.

Because the underlying ineffective-assistance claims are meritless (or insubstantial), PCRA counsel's failure to advance these claims in initial-review PCRA proceedings does not constitute cause that might excuse King's procedural default of these claims. *See Martinez*, 132 S. Ct. at 1319; *see also Glenn*, 743 F.3d at 410.

Accordingly, it is recommended that the petition be denied as procedurally defaulted with respect to King's claims 15, 17, and 20.

### D. Suggestive photo array claim waived on direct appeal

In claim 1, King contends that the trial court erred in denying his motion to suppress a purportedly unduly suggestive photo array and subsequent in-court identification by witnesses tainted by the photo array. In particular, King contends that the picture of him used in the photo array was "markedly different" from the other pictures used. He asserts that his hairstyle was "significantly different" from the other individuals pictured, and that his complexion was "strikingly different" than the other individuals pictured.

As previously noted, a federal court generally will not review a claim that is procedurally defaulted.[11] *Johnson v. Folino*, 705 F.3d 117, 127 (3d Cir. 2013). A claim is procedurally defaulted when "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule." *Coleman*, 501 U.S. at 750. Notwithstanding procedural default, a federal court may review a habeas claim where the petitioner can demonstrate cause for the default and actual prejudice as a result, or that failure to review the claim will result in a fundamental miscarriage of justice. *Id.*; *McCandless*, 172 F.3d at 260.

It is the petitioner's burden to demonstrate circumstances excusing procedural default. *See Sweger*, 294 F.3d at 520; *see also Coleman*, 501 U.S. at 750; *Lines*, 208 F.3d at 160. To demonstrate "cause" for a

---

[11] The respondent does not argue procedural default with respect to this claim, but a federal habeas court has discretion to raise procedural default *sua sponte*. *Sweger*, 294 F.3d at 520. "To the extent that [King] is entitled to notice and an opportunity to respond to the Court raising the issue of procedural default *sua sponte* and to show a basis for excusing default, the report and recommendation procedure with its opportunity to file objections provides such notice and opportunity to be heard." *Bethea v. Bickell*, Civil No. 13-CV-1694, 2015 WL 1608521, at *9 n.4 (M.D. Pa. Apr. 10, 2015); *see also Ortiz v. Sauers*, Civil Action No. 5:12-CV-1209, 2014 WL 1096177, at *2 (E.D. Pa. Mar. 19, 2014); *Young v. Clearfield County Commonwealth of Pleas*, Civil Action No. 08-5J, 2008 WL 1711099, at *2 n.2 (W.D. Pa. Feb. 26, 2008).

procedural default, the petitioner must show that "some objective factor external to the [petitioner's] defense impeded [his] efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488. Meanwhile, to demonstrate "actual prejudice," the petitioner must show "not merely that the errors at his [plea] created a *possibility* of prejudice, but that they worked to his *actual* and substantive disadvantage, infecting his entire [plea] with error of constitutional dimensions." *Frady*, 456 U.S. at 170 (emphasis in original); *McCabe v. Pennsylvania*, 419 F. Supp. 2d 692, 697 n.3 (E.D. Pa. 2006); *Mutope*, 2005 WL 3132315, at *3. Alternatively, to show that a fundamental miscarriage of justice will occur if the claims are not reviewed, a petitioner must present new evidence that he is actually innocent of the crime for which he has been convicted. *Cristin*, 281 F.3d at 412; *see also Bousley*, 523 U.S. at 623 ("'[A]ctual innocence means factual innocence, not mere legal insufficiency."); *Schlup*, 513 U.S. at 327 ("[A] petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.").

The Superior Court of Pennsylvania found King's claim 1 to have been waived on appeal because he failed to include in the certified record on appeal both the black-and-white and color copies of the photo array

considered by the trial court in ruling on the motion to suppress. (RR625–27, Doc. 12-2, at 161–63). In so ruling, the Superior Court cited Rule 1921 of the Pennsylvania Rules of Appellate Procedure and several state court decisions interpreting and applying that rule. (*Id.*). Under this state procedural rule, an appellate court's review is limited to the contents of the certified record on appeal. *See* Pa. R. App. P. 1921; *Commonwealth v. Young*, 317 A.2d 258, 264 (Pa. 1974). Failure by the appellant to ensure that the record certified for appeal contains sufficient information for the appellate court to conduct a proper review constitutes waiver of the issue sought to be examined. *See Commonwealth v. Manley*, 985 A.2d 256, 263–64 (Pa. Super. Ct. 2009) (finding unduly suggestive photo array claim was waived by failure to ensure the photo array was included in the certified record on appeal). The waiver of claims for failure to comply with Rule 1921 of the Pennsylvania Rules of Appellate Procedure is an independent and adequate state procedural rule, and thus King's claim 1 is procedurally defaulted before this Court. *See Martz v. Mooney*, Civil No. 3:13-CV-2570, 2016 WL 2347189, at *9–*10 (M.D. Pa. May 4, 2016); *see also Abney v. Vaughn*, No. Civ.A. 03-66, 2003 WL 22436282, at *11 (E.D. Pa. Oct. 24, 2003).

Although he has failed to explicitly assert cause and prejudice to excuse procedural default, King's assertion of claim 6 in his federal habeas petition—alleging ineffective assistance of appellate counsel based on counsel's failure to include copies of the photo array in the certified record on appeal—may be liberally construed to assert the ineffectiveness of appellate counsel as cause excusing procedural default of the underlying claim. *See Martinez*, 132 S. Ct. at 1317 ("[A]n attorney's errors during an appeal on direct review may provide cause to excuse a procedural default; for if the attorney appointed by the State is ineffective, the prisoner has been denied fair process and the opportunity to comply with the State's procedures and obtain an adjudication on the merits of his claims."). *See generally Mala*, 704 F.3d at 244–46 (incarcerated *pro se* litigants entitled to liberal construction of pleadings and other papers).

"However, only ineffective assistance rising to the level of a Sixth Amendment violation can constitute cause for a procedural default . . . ." *Monroe v. Phelps*, 825 F. Supp. 2d 520, 536 (D. Del. 2011) (citing *McKleskey v. Zant*, 499 U.S. 467, 494 (1991)); *see also Murray v. Carrier*, 477 U.S. 478, 488 (1986) ("So long as a defendant is represented by counsel whose performance is not constitutionally ineffective . . . we discern no

inequity in requiring him to bear the risk of attorney error that results in a procedural default."). As discussed below, King's claim 6—the ineffective assistance of appellate counsel claim asserted as cause excusing procedural default of claim 1—was reviewed by the Superior Court of Pennsylvania on PCRA appeal and denied on its merits, and the Supreme Court of Pennsylvania subsequently denied allocatur. In our review of that claim below, we find that the state appellate court's decision on the merits of that ineffective assistance claim was a reasonable application of clearly established federal law and a reasonable determination of the facts in light of the evidence before it. Because this ineffective assistance claim is meritless, King has failed to establish cause and prejudice to excuse the procedural default of claim 1. *See Monroe*, 825 F. Supp. 2d at 536.

Accordingly, it is recommended that the petition be denied as procedurally defaulted with respect to King's claim 1.

### E. Claims decided on the merits by the state courts

King's remaining habeas claims—claims 2, 3, 4, 6, 7, 8, and 9—were each denied on the merits by the Superior Court of Pennsylvania, and the Supreme Court of Pennsylvania subsequently summarily denied allocatur.

A federal court may not grant relief on a habeas claim previously adjudicated on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d). In drafting this statute, Congress "plainly sought to ensure a level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." *Williams v. Taylor*, 529 U.S. 362, 386 (2000); *see also Eley v. Erickson*, 712 F.3d 837, 846 (3d. Cir. 2013). Consequently, "state-court judgments must be upheld unless, after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." *Williams*, 529 U.S. at 387. "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be [objectively] unreasonable." *Id.* at 411; *see also Eley*, 712 F.3d at 846.

Moreover, any factual findings by the state trial and appellate courts are presumed to be correct, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013); *Eley*, 712 F.3d at 846.

Because the Supreme Court of Pennsylvania summarily denied allocatur, this Court looks to the disposition of his direct and PCRA appeals by the Superior Court of Pennsylvania as the last reasoned state judgments on these claims. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). Moreover, although the Superior Court's PCRA decision was not a summary disposition, it expressly adopted the reasoning of the PCRA court by reference. (*See* RR733, Doc. 12-2, at 269). Accordingly, we also look to the PCRA court's opinion.

### 1. Claim 2: Sufficiency of the evidence

In claim 2, King claims that his conviction for third-degree murder, aggravated assault, and reckless endangerment was based on insufficient evidence as a matter of law because the evidence did not establish beyond a reasonable doubt that he acted with malice aforethought or that he did not act in self-defense when he shot the victim.

On direct appeal, the Superior Court considered King's insufficient

evidence claim and denied it on the merits. As explained by the Superior

Court in its written opinion, Pennsylvania law provides that:

> To prove one committed third degree murder, the
> Commonwealth need not show he acted with the specific
> intent to kill another but merely that he acted with
> malice aforethought or wanton and reckless conduct that
> manifests extreme indifference to the value of human
> life. Legal malice may be inferred and found from the
> attending circumstances, and, like the specific intent to
> kill, may be inferred from the intentional use, without
> legal excuse or legal justification, of a deadly weapon on a
> vital part of another human body. The factfinder could
> permissibly infer the malice required to establish murder
> of the third degree from appellant's firing of a gun at
> point-blank range into the victim's head.

(RR628–29, Doc. 12-2, at 164–65 (citations and internal quotation marks

omitted)).

In denying King's insufficient evidence claim with respect to the

murder charge, the Superior Court found that the uncontroverted evidence

that King shot his victim in the head was sufficient to establish the malice

aforethought upon which King's third-degree murder conviction rested.

(RR629–30, Doc. 12-2, at 165–66).

On direct appeal, King argued that he had a valid legal justification

for shooting the victim: self-defense. The Superior Court noted that:

> The defendant's basic contention is that the jury should
> have believed his evidence that the shooting was

> committed in self-defense or in defense of others and
> disbelieved the Commonwealth's evidence concerning an
> inference of malice from the use of a deadly weapon on a
> vital part of the body. . . . [But] it is the province of the
> trier of fact to pass upon the credibility of witnesses and
> the weight to be accorded the evidence produced. The
> fact-finder is free to believe all, part, or none of the
> evidence. Factual disputes are for the jury to resolve . . . .
> The facts clearly provide sufficient evidence when viewed
> in the light most favorable to the Commonwealth to
> sustain appellant's conviction for murder of the third
> degree.

(RR630, Doc. 12-2, at 166 (quoting *Commonwealth v. Simmons*, 394 A.2d
431, 439 (1978) (plurality opinion)) (citations, internal quotations,
brackets, and ellipses omitted)). It further observed that:

> When a defendant raises the issue of self-defense, the
> Commonwealth bears the burden to disprove such a
> defense beyond a reasonable doubt. The Commonwealth
> sustains this burden if it establishes at least one of the
> following: (1) the accused did not reasonably believe that
> he was in danger of death or serious bodily injury; (2) the
> accused provoked or continued the use of force; or (3) the
> accused had a duty to retreat and the retreat was
> possible with complete safety. The Commonwealth need
> only prove one of these elements beyond a reasonable
> doubt to sufficiently disprove a self-defense claim.

(RR631, Doc. 12-2, at 167 (quoting *Commonwealth v. Ventura*, 975 A.2d
1128, 1143 (Pa. Super. Ct. 2009) (emphasis omitted)).

The Superior Court found that:

> [T]he jury . . . determined that the Commonwealth

> established Appellant did not act in self-defense. The
> Commonwealth relies on a statement Appellant made to
> an incarcerated friend, Donte Milburn, in which "Mr.
> Milburn advises Appellant to claim self-defense, to which
> Appellant incredulously replied that it wasn't self-
> defense because Appellant shot at the victim eleven
> times.". . . As the trial court observes, "The victim had
> been holding a loaded gun himself before the shooting,
> but his weapon was not discharged. Appellant was the
> only person to fire his weapon during the entire
> incident."

(RR632, Doc. 12-2, at 168 (citations, ellipses, and brackets omitted).

The Superior Court analyzed these facts, ultimately concluding that

King's conviction for third-degree murder was supported by sufficient

evidence. The state appellate court explained its reasoning:

> This evidence is sufficient to support the jury's conclusion
> that Appellant continued the use of force. Although the
> victim *sub judice* was armed and initiated the threats of
> violence, Appellant continued the use of force, which is
> sufficient to disprove Appellant's self-defense claim.
> Appellant essentially asks this Court to believe his self-
> defense claim, even though evidence exists to support the
> jury's rejection thereof. . . . [W]e decline to do so.

(RR633, Doc. 12-2, at 169) (citations omitted).

The Superior Court continued, addressing this claim as it pertained

to King's conviction for aggravated assault and reckless endangerment.

The Superior Court observed that, under Pennsylvania law:

> Aggravated assault is defined as follows: "A person is

guilty of aggravated assault if he: (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa. C.S. § 2702(a)(1). Recklessly endangering another person is defined as follows: "A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa. C.S. § 2705.

(RR634–35, Doc. 12-2, at 170–71 (brackets omitted)).

In denying King's insufficient evidence claim with respect to these lesser charges, the Superior Court found that:

Several witnesses testified for the Commonwealth that they heard as many as twelve shots fired during the course of this incident. Other witnesses testified that Appellant was not the only person involved to have a gun at the crime scene; however, Appellant was the only person to fire a weapon. Three individuals were shot, one of whom died. Of the other two individuals who survived the incident, Mr. Johnson was shot in the chest; Mr. Hill was shot in the thigh. Both men testified that Appellant shot them. We believe that in shooting and injuring Mr. Johnson and Mr. Hill, Appellant demonstrated his intention to cause serious bodily injury to others, manifesting an extreme indifference to the value of human life.

(RR635, Doc. 12-2, at 171 (brackets omitted)).

The Superior Court analyzed these facts, ultimately concluding that King's conviction for third-degree murder was supported by sufficient

evidence. The state appellate court explained its reasoning:

> As with his challenge to his conviction for third-degree murder, Appellant contends that the Commonwealth failed to disprove self-defense as to aggravated assault and recklessly endangering another person. We disagree. Appellant provides no evidence that Johnson or Hill threatened him or anyone else in any way or that either of them possessed firearms. Absent such evidence, there is no basis for a self-defense claim as to Johnson or Hill. Thus the evidence supports a determination that Appellant was the only party to use force. We conclude [that] ample evidence existed to reject his self-defense claim.

(RR635–36, Doc. 12-2, at 171–72 (citations omitted)).

There is nothing in the record to suggest that adjudication on the merits by the state appellate court resulted in a decision that was based on an unreasonable determination of the facts, nor is there anything to suggest that adjudication on the merits by the state court was contrary to, or an unreasonable application of, clearly established federal law. On its face, the state appellate court's rationale is a reasonable application of *Jackson v. Virginia*, 443 U.S. 307 (1979), which provides the controlling standard for evaluating insufficient evidence claims. *See id.* at 319 (holding that, on federal habeas review, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the

crime beyond a reasonable doubt") (emphasis in original). As the Supreme

Court of the United States has observed,

> *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'"

*Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012) (per curiam). Because

the record before the state appellate court contained sufficient evidence for

a reasonable factfinder to find malice aforethought and to reject King's

claim of self-defense, his habeas claim that his conviction was based on

insufficient evidence is meritless.

Accordingly, it is recommended that the petition be denied on the

merits with respect to King's claim 2.

## 2. *Claim 3: Weight of the evidence*

In claim 3, King contends that his conviction for third-degree

murder, aggravated assault, and reckless endangerment was against the

greater weight of the evidence. In particular, he argues that the jury's verdict was against the weight of the evidence with respect to whether he acted with malice aforethought and whether he acted in self-defense when he shot the victim.

> A claim that the verdict was against the weight of the evidence is distinguishable from a claim that the evidence was insufficient to support the verdict. . . . A sufficiency of the evidence claim requires an inquiry into whether, upon the evidence presented in a state criminal proceeding, a rational trier of fact could have found proof of guilt beyond a reasonable doubt. A weight of the evidence claim, however, concerns a determination by the fact finder that certain evidence was more credible than other evidence.

*Ford v. Varano*, Civil Action No. 08-4497, 2010 WL 276756, at *13 (E.D. Pa. Jan. 19, 2010) (citations and internal quotation marks omitted); *see also Tibbs v. Florida*, 457 U.S. 31, 37–38 (1982) ("A reversal based on the weight of the evidence . . . draws the appellate court into questions of credibility.").

"Title 28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). Thus, "[a] federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against

the 'weight' of the evidence . . . ." *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985); *see also Sporish v. Harlow*, Civil Action No. 12-4142, 2015 WL 10939692, at *19 (E.D. Pa. May 7, 2015) ("A claim that the verdict is against the weight of the evidence requires that the reviewing court reassess the credibility of the evidence presented at trial, which a federal habeas court is not empowered to do."); *Ford*, 2010 WL 276756, at *13. Moreover, a habeas petitioner's claim that his conviction was against the weight of the evidence is grounded in state rather than federal law, and thus it is not cognizable on federal habeas review. *See McKinnon v. Superintendent*, 422 Fed. App'x 69, 75 (2d Cir. 2011) ("[T]he argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus."); *Mobley v. Kirkpatrick*, 778 F. Supp. 2d 291, 311–13 (W.D.N.Y. 2011); *Horton v. Ercole*, 557 F. Supp. 2d 308, 324 (N.D.N.Y. 2008).

Accordingly, it is recommended that the petition be denied as non-cognizable with respect to King's claim 3.

### 3. *Claim 4: Evidentiary ruling*

In claim 4, King contends that the trial court abused its discretion in admitting black-and-white autopsy photographs of the victim into evidence

at trial, over his objection. He argues that the photos were inflammatory and cumulative, and thus any probative value to these photographs was outweighed by their potential prejudicial impact.

In his petition, memorandum of law, and reply, King characterizes the error at issue in this claim exclusively as an "abuse of discretion" by the trial court in deciding an evidentiary issue. On direct appeal, the claim was also characterized solely as an evidentiary issue. (*See* RR533–35, Doc. 12-2, at 69–71). There is no reference to any federal grounds for this claim in any of the parties' papers.

"A federal habeas court . . . cannot decide whether the evidence in question was properly allowed under the state law of evidence. A federal habeas court is limited to deciding whether the admission of the evidence rose to the level of a due process violation . . . ." *Keller v. Larkins*, 251 F.3d 408, 416 n.2 (3d Cir. 2001); *see also Estelle v. McGuire*, 502 U.S. 62, 67–68 (("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Wilson v. Vaughn*, 533 F.3d 208, 213 (3d Cir. 2008) ("Admissibility of evidence is a state law issue."). King's claim 4 exclusively concerns a ruling by the trial court under the state law

of evidence, without reference to any federal constitutional claim.[12]

Accordingly, it is recommended that the petition be denied as non-cognizable with respect to King's claim 4.

### 4. Claim 6: Ineffective assistance of appellate counsel

In claim 6, King claims that he was denied the effective assistance of counsel on direct appeal. In affirming the PCRA court's denial of PCRA relief, the Superior Court rejected this claim on its merits, applying the three-pronged Pennsylvania standard for judging ineffectiveness claims set forth in *Commonwealth v. Franklin*, 990 A.2d 795, 797 (Pa. Super. Ct. 2010), which the Third Circuit and this Court have previously found to be substantively identical to the two-pronged federal ineffectiveness standard enunciated by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Boyd v. Waymart*, 579 F.3d 330, 334

---

[12] We decline to construe this claim to also state a due process claim. "If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial proceeding denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." *Duncan v. Henry*, 513 U.S. 364, 366 (1995) (per curiam); *see also Keller v. Larkins*, 251 F.3d 408, 414 (3d Cir. 2001) (quoting *Duncan*). King failed to articulate a constitutional claim arising from this evidentiary ruling in his federal habeas petition or any other papers filed in this Court, and even if he had done so, he also failed to do so on direct appeal or in his PCRA proceedings, and the claim therefore would be barred from federal habeas review on procedural default grounds.

n.2 (3d Cir. 2009); *Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000); *Showers v. Beard*, 586 F. Supp. 2d 310, 321–22 (M.D. Pa. 2008); *see also Handlin v. Pa. Dep't of Corrs.*, Civil Action No. 1:12-CV-2197, 2013 WL 5272833, at *14 (M.D. Pa. Sept. 17, 2013) (discussing *Franklin*). Accordingly, this Court may not grant relief unless it determines that the state appellate court's decision on the merits was an unreasonable application of *Strickland*, or that it was based on "unreasonable factual determinations when deciding whether the petitioner received constitutionally effective counsel." *Showers*, 586 F. Supp. 2d at 322.

Under *Strickland*, a habeas petitioner is required to establish two elements to state a successful claim for ineffective assistance of counsel: (1) "that counsel's performance was deficient," and (2) "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. The *Strickland* test is conjunctive and a habeas petition must establish both the deficient performance prong as well as the prejudice prong. *See id.* at 687; *Rainey v. Varner*, 603 F.3d 189, 197 (3d Cir. 2010). But, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

Counsel's performance is deficient only if it falls below the wide range of competence demanded of attorneys in criminal cases. *Id.* at 687–89. This requires a showing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Harrington v. Richter*, 562 U.S. 86, 104 (2001) (quoting *Strickland*, 466 U.S. at 687). When a federal habeas petitioner advances an ineffective assistance of counsel claim that a state court has already rejected on its merits, he is faced with "the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Under this "doubly deferential" standard, the Court must "give[] both the state court and the defense attorney the benefit of the doubt." *Burt*, 134 S. Ct. at 13. Indeed, a federal habeas court is "required not simply to give the attorney the benefit of the doubt, but to affirmatively entertain the range of possible reasons petitioner's counsel may have had for proceeding as he did." *Branch v. Sweeney*, 758 F.3d 226, 235 (3d Cir. 2014) (quoting *Cullen v. Pinholster*, 131 S. Ct. 1388, 1407 (2011)) (alterations omitted).

With respect to the prejudice prong of the *Strickland* test, the petitioner "must show that there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Here, the Superior Court and the PCRA court considered King's ineffectiveness claim with respect to appellate counsel's failure to submit copies of the purportedly unduly suggestive photo array for inclusion in the certified record on appeal, which caused the Superior Court to dismiss the underlying claim of trial error on the ground that it had been waived. The state courts denied this claim on its merits, finding that omission of the photo arrays was harmless (or failed to prejudice King's defense), and therefore this ineffective assistance claim was meritless. The state courts provided the following explanation of their reasoning:

> Attorney Robinson explained that he did not submit the photographic lineup to the Superior Court because the District Attorney was ordered to do so. He failed to check the docket to confirm that it was submitted. [King]'s brother testified and identified him as being the shooter. [King] did not deny he was present during the shooting, nor did he deny shooting the victim; his position at trial was that he acted in self-defense.

> As it relates to this issue, we find the failure to include the photographic lineup was harmless error given [King]'s identity was not at issue during the trial. Attorney Robinson filed the motion to suppress in order to pursue every avenue for the defense. He indicated that he knew early on that [King]'s brother was going to testify and at least put [King] at the scene. Had the

> photographic lineup been provided to the Superior Court, we do not see how it would have changed the outcome. Based on the foregoing, we find this issue is without merit.

(RR721, Doc. 12-2, at 257 (citations omitted); *see also* 733, Doc. 12-2, at 269 ("After review of the parties' briefs and the certified record, we agree with the sound reasoning of the PCRA court, which is supported by the record, and adopt it herein by reference.")).

Based on the record before the Superior Court, there is nothing to suggest that the Superior Court applied *Strickland* to the facts of this claim in an objectively unreasonable manner, nor is there anything to suggest an unreasonable determination of the facts by the state court. *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) ("[I]t is the habeas applicant's burden to show that the state court applied *Strickland* to the facts of the case in an objectively unreasonable manner.").

Accordingly, it is recommended that the petition be denied on the merits with respect to King's claim 6.

### 5. *Claims 7, 8, and 9: Ineffective assistance of trial counsel, prosecutorial misconduct, and trial error based on the deceased victim's "stick-up kids" comment*

Claims 7, 8, and 9 all arise from the same snippet of testimony. At trial, King's brother, Bryan Louey, was called as a witness for the

prosecution, and he testified that the deceased victim called King and Louey "stick-up kids." (RR298, Doc. 12-1, at 301). In claim 7, King contends that his trial counsel was ineffective because he failed to object or move for a mistrial when Louey gave this testimony despite a pretrial suppression order. In claim 8, King contends that he was denied a fair trial because the prosecution failed to instruct its own witness, Louey, to avoid testifying about this particular statement by the deceased victim, despite the pretrial suppression order. In claim 9, King contends that the trial court erred in failing to declare a mistrial *sua sponte* when Louey presented this testimony, in violation of the pretrial suppression order. (*See* Doc. 1, at 15–16; Doc. 11, at 42–44; Doc. 17, at 8–9).

a. *Claim 7: Ineffective assistance of trial counsel for failure to object or move for a mistrial*

In claim 7, King contends that his trial counsel was ineffective because he failed to object or move for a mistrial when Louey testified that the deceased victim called them "stick-up kids." The Superior Court and the PCRA court considered King's ineffectiveness claim with respect to trial counsel's failure to object or move for a mistrial and denied this claim on its merits, finding that King failed to demonstrate that trial counsel's performance was deficient. The state courts provided the following

explanation of their reasoning:

> During the PCRA hearing, Attorney Robinson, trial counsel for [King], recalled the context of the statement at issue. On direct examination, the prosecutor asked Bryan Louey, "This is Buck Shadell [Johnson], he's counting money?"; Louey responded and then continued on, nonresponsive to the question. Eventually, as Louey was talking about what happened, he testified that Shaddell Johnson had called them (including [King]) stick-up kids.[13] Attorney Robinson explained that after he looked at the trial transcript and when court recessed for the day, he spoke to [King] regarding the use of the term stick-up kids. Attorney Robinson felt that Mr. Louey's testimony was "immensely" helpful to the defense and the mention of stick-up kids was quick—not loud or pronounced. It was his opinion that they should let the statement go and not request a mistrial and [King] agreed.

> While this issue has arguable merit, we believe Attorney Robinson demonstrated a reasonable basis for his decision not to object and request a mistrial. Therefore, we find [King] is not entitled to relief under this claim.

(RR716–17, Doc. 12-2, at 252–53 (citations omitted); *see also* 733, Doc. 12-2, at 269 ("After review of the parties' briefs and the certified record, we

---

[13] In his PCRA testimony, King's trial counsel mischaracterized the "stick-up kids" comment as one made by a separate, surviving assault victim, rather than the deceased victim. The PCRA court's opinion incorporated this same mischaracterization into its discussion of the issue as well. But it is clear from the record before this Court that the "stick-up kids" comment discussed in this testimony is the statement by the deceased victim upon which King's claims 7, 8, and 9 are based.

agree with the sound reasoning of the PCRA court, which is supported by the record, and adopt it herein by reference.")).

Two witnesses testified at King's PCRA hearing: King and his trial counsel. King provided testimony on the "stick-up kids" comment made by King's brother while testifying as a prosecution witness at King's trial, on trial counsel's failure to object to the testimony or move for a mistrial, and on the trial court's failure to declare a mistrial *sua sponte*. (RR669–70, Doc. 12-2, at 205–06; RR673–76, Doc. 12-2, at 209–12). King's trial counsel provided testimony regarding the "stick-up kids" testimony as well, and about his conversation with King about the comment in which he advised King that he did not believe the comment merited an objection or a motion for a mistrial. (RR681–84, Doc. 12-2, at 217–20; RR695–96, Doc. 12-2, at 231–32).

Based on the record before the Superior Court, there is nothing to suggest that the Superior Court applied *Strickland* to the facts of this claim in an objectively unreasonable manner, nor is there anything to suggest an unreasonable determination of the facts by the state court. *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) ("[I]t is the habeas applicant's burden to show that the state court applied *Strickland* to the facts of the

case in an objectively unreasonable manner."); *see also Knowles*, 556 U.S. at 123 (discussing "the doubly differential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard); *Burt*, 134 S. Ct. at 13 (noting that a federal habeas court must "give[] both the state court and the defense attorney the benefit of the doubt"); *Branch*, 758 F.3d 235 (noting that a federal habeas court must "affirmatively entertain the range of possible reasons petitioner's counsel may have had for proceeding as he did").

Accordingly, it is recommended that the petition be denied on the merits with respect to King's claim 7.

b. *Claims 8 and 9: Denial of a fair trial by prosecutorial misconduct and failure to declare a mistrial despite manifest necessity to do so*

In claim 8, King contends that he was denied a fair trial because the prosecution failed to instruct its own witness, Louey, to avoid testifying that the deceased victim called them "stick-up kids." In claim 9, King contends that the trial court erred in failing to declare a mistrial *sua sponte* when Louey presented this testimony. Liberally construed, King appears to contend in these two claims that he was denied a fair trial, in violation of the Fourteenth Amendment's Due Process Clause.

These very same claims were previously considered by the trial court

in its 1925(b) opinion on direct appeal, which found that the prosecution
"did not intentionally elicit this testimony; it was part of the witness's
narrative of events," and that "[trial] counsel did not object to this
testimony at trial," thus any claim of prosecutorial misconduct or trial
error claim based on this testimony was meritless. (RR498–99, Doc. 12-2,
at 34–35; *see also* RR487–88, Doc. 12-2, at 23–24). Appellate counsel
articulated these same claims on direct appeal, addressing them briefly
among a set of claims that "may/may not involve claims of ineffective
assistance of counsel"; appellate counsel ultimately characterized these as
ineffective assistance claims and abandoned them on the ground that they
were more appropriate for presentation in a subsequent PCRA petition.
(RR532–33, Doc. 12-2, at 68–69.) The Superior Court agreed with this
characterization of the claims and dismissed them without prejudice to
litigation on subsequent PCRA review. (RR640–41, Doc. 12-2, at 176–77).

King's *pro se* PCRA petition included these prosecutorial misconduct
and trial error claims as part of the basis for an ineffective assistance
claim. (RR654, Doc. 12-2, at 190). Counsel was appointed to represent
King and an evidentiary hearing was conducted by the PCRA court. As
noted above, two witnesses testified on this issue: King and his trial

counsel. (RR669–70, Doc. 12-2, at 205–06; RR673–76, Doc. 12-2, at 209–12; RR681–84, Doc. 12-2, at 217–20; RR695–96, Doc. 12-2, at 231–32). Ultimately, the PCRA court found these two claims of prosecutorial misconduct and trial error to be meritless. (RR700, Doc. 12-2, at 236; RR721–22, Doc. 12-2, at 257–58). The PCRA court did not articulate its reasoning, except to state that the claims did not fall within any of the circumstances upon which PCRA relief may be based under 42 Pa. Cons. Stat. § 9543(a)(2). (RR721–22, Doc. 12-2, at 257–58). On PCRA appeal, the Superior Court adopted the reasoning of the PCRA court by reference and affirmed its denial of relief on the merits. (RR733–34, Doc. 12-2, at 269–70). In so doing, the Superior Court itself found that King's "underlying claim of prosecutorial misconduct lacks arguable merit." (RR733 n.2, Doc. 12-2, at 269 n.2).

The testimony at issue, given by Louey under direct examination by the prosecutor, follows:

> Q. Prior to 1:30 in the morning going back into the late evening hours of August 29th, 2007, did you or your brother arrange to buy cocaine from Shadel Johnson?
>
> A. Yes.
>
> Q. Tell the jury how that came about.
>
> . . . .

Q. Initially when [the victim] got out of the car did he have a gun in his hand?

A. Not yet.

Q. Not yet. Okay.

A. So he gets out of the car and comes over and starts talking, and then he walks back over to the car and the other kid in the car hands him a gun. So we're all standing there talking and stuff like that and everything is fine. So then some people pulled up in another car asking if everything is all right, stuff like that, and [the victim] puts his arm around [King] and he's like, yeah, everything is fine, you know, so I thought everything was fine.

So the guys leave that pulled up, and then a few minutes later the other two dudes pull up in another car and some girl drops them off. So they're all standing there, and then [the victim] leaves. He leaves and I guess goes and—he leaves and parks his car, but he just comes back by himself this time. So he comes back walking up by himself and we're all standing there and talking and he hand me—he hand me the drugs and I hand the money to Buck, and so he's telling—he got his gun out at this time, right, and he's telling Buck to count the money. So Buck's counting the money but—

Q. Buck meaning Shadel?

A. Yes.

. . . .

Q. This is Buck Shadel, he's counting money?

A. So he's counting the money for him, and it was like, like a hundred dollars short or something, so he was like—well, Buck was telling him that, you know, they're

all right, like they'll pay you back the money, it's just a hundred dollars. So I was like so there's no problems, I had a scale. So I told him I was like, I'll weigh it, you know what I'm saying, so no one owes nobody anything, so there's not—like we don't have to come back.

And then he just acts like I didn't even say it, and he's just like, no, no, I want all my money right now. And then he's asking Buck [Shadel], he's like, Are you vouching for them? Are they going to pay you the money? Are they going to come back and pay me the money? And he's like, yeah, because if they don't come back and pay me the money, then I'm going to shoot you, and it just escalated from there.

He said— He's like— he's like, *you guys are stick-up kids* anyway or something. He was like, I don't like you all anyway, and he said, I'll shoot you and your brother will run, meaning me. He said I'll shoot you and my brother will run, and that's when shots just started getting fired. My brother shot him.

(RR295, 297–98, Doc. 12-1, at 298, 300–01 (emphasis added)).

There is nothing in the record to suggest that adjudication on the merits by the state courts resulted in a decision that was based on an unreasonable determination of the facts, nor is there anything to suggest that adjudication on the merits by the state court was contrary to, or an unreasonable application of, clearly established federal law. On its face, the state court decision is a reasonable application of *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974), which recognized that prosecutorial misconduct may "so infect[] the trial with unfairness as to make the

resulting conviction a denial of due process," *id.* at 643, or *Dowling v. United States*, 493 U.S. 342 (1990), which recognized that the introduction of improper evidence may at times be "so extremely unfair that its admission violates 'fundamental conceptions of justice,'" *id.* at 352. For due process to have been violated, "the prosecutorial misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.'" *Greer v. Miller*, 483 U.S. 756, 765 (1987). King does not assert that Louey's testimony was false, *see generally Napue v. People of State of Illinois*, 360 U.S. 264, 269 (1959) ("[A] state may not knowingly use false evidence, including false testimony, to obtain a tainted conviction . . . ."), but merely that it violated a pretrial suppression order based on state rules of evidence.[14] "Absent evidence that the prosecutor intended to elicit the objectionable testimony, his failure to prevent such remarks by the witness did not constitute misconduct on his part." *United States v. Percy*, 250 F.3d 720, 729 (9th Cir. 2001); *see also United States v. Byers*, 603 F.3d 503, 506 (8th Cir. 2010) (no prosecutorial misconduct in absence of improper questioning); *United States v. Gaines*, 726 F. Supp. 1457, 1469

---

[14] The motion *in limine* upon which the pretrial suppression order precluding reference to the term "stick-up boys" was based solely on state rules of evidence. (*See* RR119–20, Doc. 12-1, at 122–23).

(E.D. Pa. 1989) (no prosecutorial misconduct where prosecutor did not elicit testimony at issue, but rather the witness volunteered it). Moreover, there is nothing in the record to suggest that the state court decision is an unreasonable application of *United States v. Jorn*, 400 U.S. 470 (1971), and *United States v. Perez*, 22 U.S. (9 Wheat.) 579 (1824), which provide that a *sua sponte* mistrial is justified only when "there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." *Jorn*, 400 U.S. at 481, 485; *Perez*, 22 U.S. (9 Wheat.) at 580; *see also United States v. DiSilvio*, 520 F.2d 247, 249 n.4 (3d Cir. 1975). Based on the record before the state courts, there is nothing to suggest that the state court decision was contrary to or an objectively unreasonable application of clearly established federal law to the facts of this claim, nor is there anything to suggest an unreasonable determination of the facts by the state court.

Accordingly, it is recommended that the petition be denied on the merits with respect to King's claims 8 and 9.

## III.   RECOMMENDATION

Based on the foregoing, it is recommended that the petition (Doc. 1) be **DENIED** and **DISMISSED**. It is further recommended that the Court

decline to issue a certificate of appealability, as the petitioner has failed to demonstrate "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).


Dated: October 26, 2016                    ***s/ Joseph F. Saporito, Jr.***
                                           JOSEPH F. SAPORITO, JR.
                                           United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT KING, III,

      Petitioner,

      v.

TABB BICKELL,

      Respondent.

CIVIL ACTION NO. 3:13-cv-02118

(CAPUTO, J.)
(SAPORITO, M.J.)

## NOTICE

NOTICE IS HEREBY GIVEN that the undersigned has entered the foregoing Report and Recommendation dated October 26, 2016. Any party may obtain a review of the Report and Recommendation pursuant to Local Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may

accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


Dated: October 26, 2016                          ___s/ Joseph F. Saporito, Jr.___
                                                 JOSEPH F. SAPORITO, JR.
                                                 United States Magistrate Judge